UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

BOARD OF TRUSTEES OF THE
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS NATIONAL 401(k) SAVINGS
PLAN and JOHN MURPHY and JOSH FRANK,
ITS CO-CHAIRMEN,
25 Louisiana Avenue, N.W.,
Washington, DC 20001-2130

                Civil Action No.

      Plaintiffs,

  v.

BEDFORD STUYVESANT RESTORATION
CORPORATION
1368 Fulton Street
Brooklyn, NY 11216

      Defendant.

---

## COMPLAINT FOR DELINQUENT CONTRIBUTIONS, INTEREST, AND LIQUIDATED DAMAGES OWED TO EMPLOYEE BENEFIT PLAN

The Board of Trustees of the Teamsters-National 401(k) Savings Plan ("Plan") and John Murphy, its Chairman (together, "Plaintiffs"), by and through their undersigned counsel, BEINS AXELROD, P.C., complain and allege of the Defendant as follows:

### NATURE OF ACTION, JURISDICTION AND VENUE

1. This is a civil action brought by the Board of Trustees of an employee benefit plan and by a member of the Board of Trustees who serves as Chairman of the Board ("Plaintiffs") pursuant to Sections 502(a)(2), (d)(1), (g) and 515 of the Employee Retirement Income Security Act of 1974 as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(2), (d)(1), (g), and 1145, to collect delinquent

contributions, interest, and liquidated damages owed to the employee benefit plan by a contributing employer pursuant to a collective bargaining agreement and in accordance with applicable law and the agreement between the parties. Plaintiffs also seek enforcement of the terms of the applicable Trust Agreement and the binding policies adopted by the Board of Trustees with respect to the obligations of participating employers and the consequences of a failure to submit required contributions to the Plan timely.

2. The Court has jurisdiction over this action under ERISA Sections 502(e)(1), (f), (g) and 515, 29 U.S.C. §§1132(e)(1), (f), (g), 1145; Section 301 of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. §185, 28 U.S.C. §1331, and 28 U.S.C. §1337.

3. Venue of this action properly lies in the United States District Court for the District of Columbia pursuant to ERISA Section 502(e)(2), 29 U.S.C. §1132(e)(2). The case is properly in this District, the domicile of the Plaintiff Plan and where it is administered by the Board of Trustees.

## IDENTIFICATION OF THE PARTIES

4. The Teamsters-National 401(k) Plan ("Plan") is a multiemployer employee benefit plan within the meaning of ERISA Sections 3(1), (3), and 37(A), 29 U.S.C. §1002(1), (3), and (37)(A). It is a jointly administered employee benefit plan organized under LMRA Section 302(c)(5), 29 U.S.C. §186(c)(5), and within the meaning of Sections 3 (1),(2),and(3), and Section 502 (d)(1) of ERISA, 29 U.S.C. §§ 1002 (1),(2), and (3), as well as §1132(d)(1).

5. The Plan provides retirement benefits to eligible employees of contributing employers in accordance with a plan of benefits as set forth in the Plan's Plan Document. The Plan Document, together with the Plan's Agreement and Declaration of Trust, as amended from time to time by the Trustees ("Trust Agreement"), and the Statement of Policy for Collection of Employer Contributions

of the Teamsters-National 401(k) Plan ("Collection Policy"), are the pertinent and governing documents of the Plan.

6. Plaintiffs John Murphy and Josh Frank are two of the Plan's current Trustees and are the current Co-Chairmen of the Board of Trustees of the Plan. As Trustees, each of the Plaintiffs is a fiduciary as defined in ERISA Section 3(21), 29 U.S.C. §1002(21). The Board of Trustees is the Plan Administrator.

7. The Plan maintains its principal office at 25 Louisiana Avenue, N.W., Washington, DC 20001-2130.

8. Upon information and belief, Defendant Bedford Stuyvesant Restoration Corporation. ("Bedford Stuyvesant" or "Company") is a New York corporation which at all times material to this action has maintained its principal place of business at 1368 Fulton Street, Brooklyn, New York 11216.

9. At all material times, Bedford Stuyvesant has employed workers who were and are represented by Teamsters Local Union No. 966 ("Local 966"), a labor organization affiliated with the International Brotherhood of Teamsters, and who are participants in the Plan. At all times material to this Complaint, Bedford Stuyvesant has been an "employer" in an "industry affecting commerce," as defined by ERISA Section 3(5) and (12), 29 U.S.C. §1002(5), (12) and within the meaning of the LMRA, 29 U.S.C. §152(2), (6) and (7). At all times material to this Complaint, Bedford Stuyvesant has been an "employer" within the meaning of the Plan Document, and has been bound by the terms and conditions thereto.

## BEDFORD STUYVESANT'S OBLIGATION
## TO CONTRIBUTE TO THE PLAN

10. On or about November 5, 2007, Bedford Stuyvesant and Local 966 entered into a collective bargaining agreement ("CBA"), as that term is used throughout ERISA, establishing terms and conditions of employment for individuals employed by Bedford Stuyvesant and represented by Local 966. The CBA covers those employees of the Company who are represented for the purposes of collective bargaining by Local 966. The CBA was a successor collective bargaining agreement between the Company and Local 966 and was effective by its terms commencing November 1, 2006 and remains in effect.

11. In entering into the CBA, the Employer agreed to participate in the Plan on behalf of all eligible employees represented for purposes of collective bargaining under the CBA, and to execute a Participation Agreement ("Participation Agreement") evidencing its participation in the Plan.

12. The Employer agreed in Article 16, Part "B" of the CBA to make non-elective contributions on behalf of its Eligible Employees at the rate of four and one-half percent (4.5%) of each employee's annual salary for each year.

13. Pursuant to the Participation Agreement, the Employer is bound by the terms of the Plan and the Teamsters-National 401(k) Savings Plan Trust Agreement (the "Trust Agreement") the terms of which are incorporated in the Agreement.

14. Under the terms of the Trust Agreement, the Plan's Trustees are authorized to take actions necessary and appropriate to secure compliance with the provisions of the Plan, the Trust Agreement, and the Participation Agreement, including to conduct audits of participating employers and to seek any remedies at law or in equity of a delinquent employer.

15. The Plan's Trust Agreement further provides that a participating employer which becomes delinquent in its obligations to the Plan shall be liable for all costs and expenses in

collecting or attempting to collect payments due under the Plan, including but not limited to, audit fees, interest, attorney's fees and costs. Further, in the event a judgment is obtained against a delinquent employer, the delinquent employer shall also be liable for liquidated damages in an amount equal to twenty (20%) percent of past due contributions.

16. In accordance with Article III, Section 3.11, of the Plan, employers are required to pay the non-elective contributions to the Plan no later than the due date for the Employer's federal tax return (including extension) to which they relate.

17. The Statement of Policy for Collection of Employer Contributions of the Teamsters-National 401(k) Plan ("Collection Policy"), adopted by the Trustees and binding on all parties provides that a delinquent employer is obligated to pay interest on required contributions which are not submitted to the Plan timely at the annual rate of ten percent (10.0%), or 2% above the highest prime rate during the period of delinquency, whichever is higher, from the date the Contributions became due to the date of each payment.

18. The Plan is a defined contribution plan and all delinquent contributions the Plan shall recover will be allocated to the separate accounts of the covered employees.

## COUNT I

### ERISA STATUTORY CLAIM FOR RECOVERY OF DELINQUENT CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES AND ATTORNEY'S FEES AND COSTS

19. The Company did not make timely payments of the non-elective contributions owed to the Plan for any work periods during which a Collective Bargaining Agreement ("Agreement") setting forth its obligation to contribute to the Plan was in effect commencing with the CBA effective on November 1, 2006, through the present and continuing. Based upon information and belief,

including the Company's failure to timely file the required reports with the Plan, an audit of the Company's books and records was conducted during 2012 for the period of January 1, 2007 through December 31, 2011.

20. Subsequent to a demand letter delivered to Bedford Stuyvesant in 2011 noting that it was obligated to submit reports identifying the contributions it was required to make and transfer to the Plan timely and that it was required to correct the failure to submit the required reports promptly, the Company submitted reports to the Plan for the year 2010 and 2011 which reports indicated that no contributions were due the Plan, an assertion that was, or should have been, known to be false at the time the reports were submitted to the Plan.

21. Based upon the audit of its payroll records, Bedford Stuyvesant owes the Plan $47,666.30 in delinquent non-elective contributions, exclusive of interest and other contractual and statutory damages, which amount was found to be the amount of required contributions due the Plan for the portion of the above period from January 1, 2007 through December 31, 2011, which the Company had not accurately self-reported in the reports it submitted to the Plan.

22. Despite repeated requests from and on behalf of the Plan to seek to have Defendant Bedford Stuyvesant perform its statutory and contractual obligations with respect to making required contributions to the Plan, the Company has failed and refused to submit the delinquent non-elective contributions revealed to be due and owing to the Plan as evidenced by the audit of its payroll records for the period of January 1, 2007 through December 31, 2011.

23. Upon information and belief, the Company has continued to operate its covered operations continuously in the period subsequent to end of the period for which the Plan conducted an audit, December 31, 2011, but the Company has not submitted any reports or non-elective

contributions for the period of January 1, 2012 through the present and continuing. Plaintiffs allege, upon information and belief, that the Company has continued to operate in the period subsequent to the audit at the same level as it did during the last year of the period audited, 2011, and in the absence of a timely report submitted by the Company, Plaintiffs estimate that the Company owes the Plan additional contributions for 2012 in the amount that it was found to be obligated to contribute for 2011: $24,559.03, exclusive of interest and other contractual and statutory damages.

## INJURY TO THE PLAN

24. Bedford Stuyvesant's non-elective contributions revealed due and owing to the Plan by the audit identified above, and those non-elective contributions that the Company is obligated to submit to the Plan for the period subsequent to January 1, 2012, remain delinquent and there is little prospect that, lacking judicial compulsion, Defendant Bedford Stuyvesant Restoration Corporation will satisfy its obligations to the Plan.

25. Defendant's actions have caused and continue to cause great harm to the Plan in a variety of ways, including, but not limited to, the following: they have created uncertainty concerning covered employee's accounts; they have prevented the crediting of such contributions to covered participants, and have caused those employee participants to suffer lost earnings on the non-elective contributions; they have caused the Plans to incur collection and other expenses associated with pursuing repeated delinquencies; they have caused a loss of the time value of the delinquent contributions to the Plan; and they have resulted in a discrediting of the Plan's ability to enforce obligations owed to it, which may result in other employers utilizing the same tactics. If left unremedied, these injuries will be irreparable.

26. Defendant Bedford Stuyvesant Restoration Corporation's actions are in violation of the collective bargaining agreement, the Plan's Trust Agreement, and ERISA Section 515, 29 U.S.C. §1145.

## COUNT II

### BEDFORD STUYVESANT'S FAILURE TO PAY INTEREST IT INCURRED IN ACCORDANCE WITH PLAN PROVISIONS AS A CONSEQUENCE OF ITS FAILURE TO SUBMIT REQUIRED CONTRIBUTIONS TO THE PLAN TIMELY

27. Plaintiffs hereby incorporate by reference as if fully restated herein its allegations in paragraphs 1 through 26.

28. Defendant Bedford Stuyvesant did not submit the non-elective contributions it ultimately self-reported that it was required to make to the Plan for the period of January 1, 2007 through December 31, 2007, until January 24, 2012, and as a consequence of this late submission of the required contributions the Company incurred $5,323.90 in interest in accordance with the Plan provisions.

29. Defendant Bedford Stuyvesant did not submit the non-elective contributions it ultimately self-reported that it was required to make to the Plan for the period of January 1, 2008 through December 31, 2008, until January 24, 2012, and as a consequence of this late submission of the required contributions the Company incurred $4,129.29 in interest in accordance with the Plan provisions.

30. Defendant Bedford Stuyvesant did not submit the non-elective contributions it ultimately szelf-reported that it was required to make to the Plan for the period of January 1, 2009 through December 31, 2009, until September 11, 2012, and as a consequence of this late

submission of the required contributions the Company incurred $3,483.66 in interest in accordance with the Plan provisions.

31. Defendant Bedford Stuyvesant did not submit the non-elective contributions it ultimately self-reported that it was required to make to the Plan for the period of January 1, 2010 through December 31, 2010, until September 11, 2012, and as a consequence of this late submission of the required contributions the Company incurred $2,194.60 in interest in accordance with the Plan provisions.

32. The late payments submitted by the Company in 2012 as its self-reported required contributions for the years 2007 through 2010 as alleged in paragraphs 28 through 31 above were reflected in the payroll records reviewed during the audit conducted on behalf of the Plan Trustees and the audit of the Company's payroll records for those years took into consideration all the required contributions it self-reported late in determining that there are additional required contributions due as revealed by the audit.

33. In each of the above instances in which the Company submitted a report and the non-elective contributions it admitted it was required to remit to the Plan for a prior year, later than the date when those contributions were due as provided for under the Plan and it incurred interest determined in accordance with the Collection Policy as alleged in paragraphs 28 through 31 above, a notice of the late receipt of the required contributions and the amount of interest incurred together with the instruction to remit payment for the amount of interest incurred, was sent to the Company contemporaneously with the Plan's receipt of the late contributions.

34. Despite repeated requests from and on behalf of the Plan to seek to have Defendant Bedford Stuyvesant perform its obligation to pay the interest it has incurred in accordance with

the Plan's Trust Agreement and the Collection Policy, the Company has failed and refused to submit payment for the interest it has incurred and it remains due and owing to the Plan.

35. Defendant's failure and refusal to pay the interest it has incurred is a violation of the terms and provisions of the Plan to which it has agreed to be bound and is obligated to comply and a violation of Section 515 of ERISA, 29 U.S.C§ 1145.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

    a.    A judgment against Defendant Bedford Stuyvesant Restoration Corporation and on behalf of the Plaintiffs, pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), for -

(i) Order Defendant Bedford Stuyvesant Restoration Corporation to submit all contribution reports due and owing to the Plan;

(ii) all contributions that are owed as of the date of the judgment as set forth above or as later shown to be due and owing;

(iii) the interest computed and charged at an annualized interest rate equal to ten percent (10%), or at 2% above the highest prime rates during the period of nonpayment, whichever is greater, as provided for in the Plan, on each payment due the Plan that was not timely remitted, compounded annually, through the date such contributions are or were received by the Plan;

(iv) an amount equal to the greater of interest on the contributions that were delinquent and owing to the Plan at the time this action was commenced, or liquidated damages of 20 % on all delinquent contributions;

(v) the Plan's reasonable attorney's fees and costs incurred in bringing and prosecuting this action to recover the delinquent contributions and enforce the Plan's terms;


(vi) post-judgment interest computed and charged on the entire judgment balance at an interest rate of ten percent (10%); and

(vii) enter an injunction compelling Defendant Bedford Stuyvesant Restoration Corporation to abide by the terms of the Trust Agreement and its Participation Agreement, including specifically, that Bedford Stuyvesant Restoration Corporation submit the contributions it is contractually obligated to make to the Plan timely together with the required accompanying report identifying the basis for the required contributions;.

c. That this Court retain jurisdiction of this cause pending compliance with its orders; and

d. For such further or different relief as this Court may deem proper and just.

Respectfully submitted,

_____
Jonathan G. Axelrod (DC Bar No. 210245)
H. David Kelly, Jr. (DC Bar No. 471254)
BEINS, AXELROD, P.C.
1625 Massachusetts Avenue, N.W.  Suite 500
Washington, D.C. 20036
202-328-7222
202-328-7030 (telecopier)

Attorneys for the Plaintiffs

Dated: May 21, 2013